Patricia Moore Taylor Holt *v.* James F. Taylor

5-4155                                413 S. W. 2d 52

Opinion Delivered April 3, 1967

*Willis V. Lewis,* for appellant.

*Phil Hicky* and *E. J. Butler* for appellee.

Lyle Brown, Justice. This appeal questions the order of the trial court, in which the court vested custody of a six-year-old boy in the father, subject to custody by the mother during summer vacation and for one week at Christmas, plus reasonable visitation rights.

James F. Taylor, appellee here, was granted a divorce in the lower court, April 16, 1963, under subsection 5, Ark. Stat. Ann. § 34-1202 (Repl. 1962), from Patricia Moore Taylor, appellant. At the request of the parties, the court incorporated into the decree their agreement as to the custody of their only child, James F. Taylor III, then two and a half years of age. The substance of this agreement was that if the mother entered and remained in college, the father would have custody of the child during the nine school months, and the mother would have custody during the summer months. Otherwise, each parent would have custody of the child six months in the year. It was also agreed that the court would review the matter of custody when the child attained the age of six years. During the three years that followed, there was considerable friction between the parents relative to custody, the details of which are not pertinent to a decision here.

In July 1965, the mother, appellant here, filed a petition seeking to modify the child custody provisions. She asked for permanent custody, subject to the father's right of reasonable visitation, and for child support. Hearing was held on the petition on February 3, 1966. The important changes in the circumstances of the parties, since the granting of the initial custody, were these:

1. The child is almost six years of age and is completing a year in kindergarten in Forrest City, under the custody of his father;

2. Patricia Moore Taylor is married to Maynard Holt, Jr., of Memphis. They are residing in Knoxville, Tennessee, where he is a freshman in law school. The Holts reside in a university housing area. Patricia is some seven months pregnant. Her husband receives $400.00 a month from his family in Memphis. His family appears financially able to continue these contributions.

3. James F. Taylor is remarried and has a child

by his second wife. They own their home near the public schools. Taylor is in the insurance business, and his income averages approximately $550.00 a month. With respect to his residence and income, there has been no material change, except that income from some rent property appears to be down. Also, in his property settlement with the appellant, Taylor gave her $15,000.00 in stocks, and therefore this tended to reduce his income.

Based on these changed circumstances, the chancellor awarded custody of the child to the father during the school months. He decreed that the mother have custody during summer vacation and one week during the Christmas holidays. During the mother's custody period, it was ordered that the father pay $100.00 a month child support.

Our court has consistently been reluctant to deprive a child of tender years of the care and affection of its mother. *Reynolds* v. *Tassin*, 209 Ark. 890, 192 S. W. 2d 984 (1946). Yet the ultimate test is based on this fundamental principle so well stated in *Kirby* v. *Kirby*, 189 Ark. 937, 75 S. W. 2d 817 (1934):

> "It is the well-settled doctrine in this State that the chancellor, in awarding the custody of an infant child or in modifying such award thereafter, must keep in view primarily the welfare of the child, and should confide its custody to the parent most suitable therefor, the right of each parent to its custody being of equal dignity."

This same rule has been incorporated in our statutes since 1921. See Ark. Stat. Ann. § 57-106 (1947).

The preference given the mother who is morally fit to have custody of the child does not shock the basic rule of equal dignity of each parent with respect to custody rights. When the scales are equally balanced,

motherly love and affection tip the scales in favor of the mother's custody. Therefore, because it may be said, in a restricted sense, that the law favors the mother, we have most carefully examined the record to make reasonably certain that the chancellor's award of custody to the father for nine months each year was correct.

In the decree, the chancellor mentioned the remarriage of each of the parties and their respective residences. He also mentioned the bitter feeling between the father and mother. The arguments between them, and between Mr. Holt and Mr. Taylor—all of which occurred over visitation rights, with the child are detailed in the record. The chancellor evidently perceived that these difficulties would affect the personality of the child and his attitude toward his parents. The chancellor also had this evidence before him:

1. Appellee, Taylor, was permanently established, both in home and in business in Forrest City;

2. Mrs. Adine Moore, maternal grandmother of the boy, is a lifelong and highly respected resident of Forrest City. The child spends much time with her. Mr. Taylor and Mrs. Moore are apparently not on unfriendly terms;

3. Mrs. Burk Mann, great-aunt of Taylor, helped rear Taylor. She is a close neighbor of Mrs. Moore and the child spends considerable time with Mrs. Mann;

4. The mother, appellant here, is residing in Knoxville, Tennessee. Her residence would be appropriately described as temporary, since her husband is a student. According to Holt's plans, the family would be transferring from Knoxville to Memphis in late 1967. This would mean a transfer of the child from the Knoxville school and to acquaintances in another environment;

5. In Forrest City, the child would enter public school with some of his kindergarten and neighborhood

playmates, whereas in Knoxville he would be among strangers except for his mother and her husband. To a large extent, this experience would shortly be repeated in Memphis.

For a court to choose, in a custody case, between the mother and father, the respective personalities of the parents are vital. It is in this realm that personal observation is of inestimable value. As was stated in *Wilson* v. *Wilson*, 228 Ark. 789, 310 S. W. 2d 500 (1958): "We know of no type of case wherein the personal observations of the court mean more than in a child custody case." The chancellor's experiences with these parents began in late 1962. In the succeeding years he entered at least ten orders touching on matters of divorce, child custody, and support money. These experiences afforded the chancellor opportunities to reach wise conclusions respecting the moral fiber of these parents. We are certainly justified in assuming that the chancellor's knowledge which he gained from the initial divorce proceedings, together with his four years' experience with these people, supports his conclusions with respect to custody. In cases of this nature, particular weight is given to the findings of the chancellor, *Cheek* v. *Cheek*, 232 Ark. 1, 334 S. W. 2d 669 (1960).

The chancellor specifically expressed his continued interest in the welfare of this child in a statement near the conclusion of his decree. There, he was careful to point out that the custody arrangement would "be in effect in each year in the future until and unless a modification of the order be made by this court which retains jurisdiction for such further orders as may be deemed necessary for the best interest of the child."

The prayer of appellee for dismissal of this appeal for failure to abstract the pleadings and testimony is denied. See Rule 9 (e).

Affirmed.