Freddie D. Nagel v. Minnie Doris Nagel

4672                                    433 S.W. 2d 371

Opinion Delivered November 11, 1968

*John F. Gibson* for appellant.

*William H. Drew* for appellee.

Lyle Brown, Justice.    This is a controversy over the custody of two small children.    This appeal by Freddie D. Nagel, the father, stems from the court's denial of his petition to set aside a custody order which had previously given the appellee (mother) custody, subject to visitation rights of the father.

The parties married in 1960 and lived together until January 1965.    Judy was born to the union in September 1963, and Freddie was born in June 1964.    In a contested proceeding in early 1965, the father obtained a divorce; the mother was awarded temporary custody of the children; the right of reasonable visitation was vested in the father, along with the privilege of having Judy visit with the father and paternal grandparents each week-end; and, provisions were made for child

support to be paid the mother. Late in the same year the parties were back in court concerning custody. The mother sought modification of the week-end visitation privilege concerning Judy; the father responded that Minnie Doris Nagel had married one Travis Gibbs; that Gibbs had a drinking problem and principally for that reason the children would not be in a good environment; and that custody should be vested in the father. The trial court, after testimony, declined to modify the previous custody arrangements; however, the court did add a provision which would diminish the chances of the children being exposed to the environment of alcoholic beverages. That part of the modification which is here significant is as follows:

> ". . . ; that she [mother] not allow said wards to remain at any place where alcoholic beverages are being consumed, sold, stored, or kept for human consumption. It is further ordered, that in the event of the violation of this order, this custody order be, and the same is hereby ipso facto vacated and the court will remove the custody of said wards from Minnie Doris Nagel, now Gibbs, and award custody to a qualified custodian."

That order was entered January 25, 1966. The recited prohibition provision formed the basis of a subsequent petition for modification, this time by the father. In June 1966, Freddie D. Nagel alleged that Gibbs was drinking excessively and in the presence of Nagel's children; that Minnie Doris Nagel Gibbs had violated the order; and, that she had permitted the children to remain in the presence of Gibbs when he was intoxicated. Nagel prayed that he, the father, be given custody of the children.

Some ten witnesses testified at the hearing. The second husband of Minnie Doris Nagel—Travis Gibbs —was the principal subject of the testimony; it concerned his drinking habits. The mother was called as

a witness by the father. She conceded that since the court order of January 1966, she had on probably five occasions acceded to Travis Gibbs' request that she pick up a bottle of whisky for him at a retail outlet; and that on two of those occasions, one or both children may have been with her. However, she insisted that she left the liquor in the pick-up truck and insisted that at no time was it taken into the home. Another witness (Mrs. Ramey) for Nagel testified that she had seen Travis Gibbs, subsequent to the court order of January, consume liquor in the Gibbs home and in the presence of the children. However, on cross-examination it developed that the witness never saw the bottle because it was in a paper sack. She conceded she was not sure it was liquor. Another witness testified that a month after the January court order he accosted Gibbs asleep in a truck by the side of the road late at night; that the truck was stranded and Gibbs was intoxicated. Freddie Nagel testified that on one occasion he came upon Gibbs on the highway and Gibbs was intoxicated and belligerent; and that on February 20, 1966, and three times thereafter, Nagel witnessed Gibbs buying liquor.

In her own behalf, Doris Nagel Gibbs denied having knowingly violated the court order. She asserted that she did not understand the order forbade her from running errands for her husband; that to her knowledge no liquor had been consumed in her house since the January 1966 court order; that she drinks no intoxicants of any kind; that if Mrs. Ramey saw her husband drink something out of a bottle enclosed in a sack, it probably was his medicine, which is non-alcoholic.

That hearing was conducted November 18, 1966. The trial court kept the matter under advisement for more than eleven months, principally in the hope that the parents would develop a more cooperative attitude over their custody obligations. In the interim the court enlisted the aid of the child welfare division of the Department of Welfare, pursuant to Ark. Stat. Ann. § 22-

136 (Repl. 1962). Child Welfare investigated "to ascertain if there was any further evidence in existence to show that he [Gibbs] was causing his wife to be in violation of the order so that the action could be reopened for further testimony." That report was negative, that is, no additional evidence was found against the mother.

The chancellor refused to disturb the custody arrangements contained in his order of January 1966. The basic issue before the chancellor was whether the mother had permitted the children "to remain at any place where alcoholic beverages are being consumed, stored or kept for human consumption." Specifically, it centered on the unquestioned drinking habits of Travis Gibbs—not whether Gibbs drank intoxicants in the presence of the children—but rather, whether the mother allowed these children to remain at a place where they would be exposed to the intoxicants and/or the consumption thereof. We are not unmindful of other allegations made by Nagel; we have examined the abstract and agree with the chancellor that they are without merit; and that conclusion is not seriously questioned by appellant.

The phraseology of the January 1966 order was that of the chancellor. He knows better than any other person precisely what type of activity was included in his order pertaining to intoxicants. The chancellor stated in his findings that he had made "a careful and deliberate evaluation" of the testimony and concluded that the evidence against appellee mother did not establish a violation; at least it did not preponderate to the degree required to sustain the charge. Considering the facts that the chancellor authored the phraseology of the prohibition, heard the witnesses, had the problems of this family before him almost continuously for a period of three years, and satisfied himself that no other evidence existed against the mother—in view of those combined factors—we refuse to substitute our

judgment for that of the chancellor. *Holt* v. *Taylor,* 242 Ark. 292, 413 S.W. 2d 52 (1967). At least we certainly cannot say his findings were against a preponderance of the evidence.

Appellant here confines his argument to citing the prohibition against intoxicants, directing attention to appellee's alleged violations, and reasons that it became obligatory on the chancellor to change the custody of the children. With that reasoning we cannot agree. In a case of this nature we should cleave to the paramount concern of the chancellor—the welfare of the children. The fact that they are of tender years, and being well nutured by a mother who practices abstinence—these and other factors are certainly to be evaluated.

Affirmed.

BYRD, J., not participating.