SANDRA STANDRIDGE *v.* LARRY STANDRIDGE

5-5201                                          451 S. W. 2d 726

Opinion delivered March 30, 1970

*Shaw & Shaw,* for appellant.

*Shaver, Tackett, Young & Patton,* for appellee.

GEORGE ROSE SMITH, Justice. This is a child custody case. In the original decree, entered on August 16, 1968, the chancellor awarded the divorce to the husband on the ground of desertion, but the wife was awarded the custody of the couple's only child, Kathleen, who was then not quite two years old. Child support was fixed at $50 a month.

About six months later the child's father, who had remarried, filed the present petition for a change of custody. The petition was contested by the mother and by the latter's mother and stepfather, who intervened in the case and asked that they be given the custody of the child if the chancellor found a change to be necessary. After a hearing at which the chancellor had an opportunity to see and hear all the interested persons, the chancellor set aside his original order and awarded custody of the child to the father, with specified rights of visitation in the mother. The question here is whether the court's order is against the weight of the evidence.

After the divorce the appellant, Mrs. Standridge, was beset by difficulties that were, unfortunately, of her own making. Mrs. Standridge had been trained as a practical nurse. At first she supported herself, Kathleen, and a daughter by an earlier marriage, by follow-

ing that occupation. Later on, however, she took her children to Dallas, Texas, and temporarily made her home with three other former residents of Polk county. At that time she became involved with a married man of questionable character. Within a short time Mrs. Standridge, along with that man and two others, was arrested for taking part in a scheme, which apparently had been going on for some time, by which roofing shingles were being stolen from a contractor. After a jail confinement that lasted for 86 days Mrs. Standridge pleaded guilty and was put on probation, the exact sentence not being shown by the record. Mrs. Standridge then returned to her mother and stepfather's home at Cove, in Polk county. At the time of the trial she was still on probation and was employed as a nurse in Mena.

On the day after Mrs. Standridge was put in jail at Dallas an acquaintance from Arkansas picked up the two children and brought them back to Polk county. There the county court vested Kathleen's temporary custody in the child's paternal grandmother, Marie Standridge, who was living at Mena. That was the situation at the time of the hearing which resulted in the order by which the right of custody was vested in the child's father, the appellee. There is no serious objection to the conditions and environment either in Standridge's home near Texarkana or in Mrs. Standridge's home at Cove. At the time of the trial Standridge and his second wife were expecting a child; so Kathleen would have a half brother or half sister at either place.

When an infant of tender years is involved the law tends to favor the mother in controversies such as this one. Even so, and despite the sympathy that we naturally have for the appellant, we cannot say with confidence that the chancellor was wrong in deciding the case as he did. In reaching his conclusion the chancellor found that the mother had not properly cared for the child and had not convinced the court that she would properly care for the child in the future.

Precedents are of scant value in cases of this kind, but there are points of similarity between this appeal and that which we considered in *Holt* v. *Taylor,* 242 Ark. 292, 413 S. W. 2d 52 (1967). This language from that opinion is especially persuasive: "For a court to choose, in a custody case, between the mother and father, the respective personalities of the parents are vital. It is in this realm that personal observation is of inestimable value." In the case at bar the arguments for and against a continuation of the mother's custody are evidently so closely balanced that the case might well have been decided either way in the trial court. When we contrast our mere reading of the printed page with the infinitely better opportunity that the chancellor had for reaching a wise decision, we are unwilling to substitute our judgment for his.

Affirmed.