RUTH MEYERS SETTLE *v.* RONALD P. MEYERS

5-5741                                          473 S.W. 2d 434

Opinion delivered December 6, 1971

*Franklin Wilder,* for appellant.

*Hardin, Jesson & Dawson,* for appellee.

LYLE BROWN, Justice. This is a child custody case. Custody having previously been awarded the appellee-father, the appellant-mother filed her petition alleging a change in circumstances. The court held that no change in circumstances was shown. On appeal the mother contends that a substantial change in conditions was established, that the best interests of the child would be served by giving custody to the mother, and that the mother is

entitled to custody of the five-year-old daughter under the equities in the case.

The father was awarded a divorce in September 1970. He was given custody of the child but the mother was to have possession of the child during week days. Four months later the father petitioned the court for modification of the custody and visitation order. He alleged that three days after the divorce the mother married her paramour. After hearing that petition the court gave the child to the father during week days and to the mother on week-ends. There was no appeal from that order which was entered January 5, 1971.

In April 1971 the mother filed the petition which is now before us. She alleged that the little girl slept in bed with the father; that she was not kept clean; and that the father worked long hours and left the child with a baby sitter. The mother averred that she had a good home, was financially able to support the child, and would devote full time to the care of the little girl. The mother is a nurse and at the time of trial was working full time but said she would quit her job if the requested custody rights were vested in her. After an extended hearing the court found no substantial change in conditions. The previous order, however, was modified by changing the mother's visitation rights to two nights during the week and two weeks in the summer.

Nothing seriously critical can be said of the parents. Both are very fond of the child and the child is devoted and happy in the custody of either parent. However we do find two significant changes in circumstances which persuade us to believe that the welfare of the little girl dictates that she should be in the custody of the mother. The work hours of the father are not conducive to the best interest of the child. The child is taken to school at seven o'clock in the morning and the father is not avail- to her until five o'clock or after, depending on whether he works overtime. In February 1971 the father earned $102.60 at overtime; in March, $117.15; and in April, $222.75. Those figures indicate a considerable increase in overtime each succeeding month. The second essential

change in conditions is the status of the mother. She is now financially able to quit a full time job as nurse and to devote complete attention to the rearing of the little girl.

The factors we have recited—the part-time presence of the father and the full time attention of the mother— become still more important when we consider the attitude of this court in choosing between the father and the mother for the rearing of a girl of tender years. "[T]here is much wisdom in the view, expressed many times in our reports, that a mother is better fitted than a father to take care of a very young child—especially a girl." *McDaniel* v. *McDaniel*, 224 Ark. 371, 273 S. W. 2d 406 (1954).

Custody is granted the mother subject to the right which we vest in the father to have the child visit him during week-ends.

Reversed and remanded.

FOGLEMAN, J., dissents.

JOHN A. FOGLEMAN, Justice, dissenting. I cannot agree to the reversal of this child custody decree. Appellate review of decrees in these cases should be no different from that in any other case, *i. e.*, we should not reverse the chancellor's findings unless we can say that they are clearly against the preponderance of the evidence. It is probably more important that we adhere to this rule in custody cases than in others. The superior ability of the chancellor to properly determine the critical issue (the best welfare of the child) is never more apparent than it is in awarding custody of a child, or in modifying a previous award. See *Holt* v. *Taylor*, 242 Ark. 292, 413 S. W. 2d 52. There we said:

> Our court has consistently been reluctant to deprive a child of tender years of the care and affection of its mother. *Reynolds* v. *Tassin*, 209 Ark. 890, 192 S. W. 2d 984 (1946). Yet the ultimate test is based on this fundamental principle so well stated in *Kirby* v. *Kirby*, 189 Ark. 937, 75 S. W. 2d 817 (1934):

"It is the well-settled doctrine in this State that the chancellor, in awarding the custody of an infant child or in modifying such award thereafter, must keep in view primarily the welfare of the child, and should confide its custody to the parent most suitable therefor, the right of each parent to its custody being of equal dignity."

This same rule has been incorporated in our statutes since 1921. See Ark. Stat. Ann. § 57-106 (1947).

The preference given the mother who is morally fit to have custody of the child does not shock the basic rule of equal dignity of each parent with respect to custody rights. When the scales are equally balanced, motherly love and affection tip the scales in favor of the mother's custody. Therefore, because it may be said, in a restricted sense, that the law favors the mother, we have most carefully examined the record to make reasonably certain that the chancellor's award of custody to the father for nine months each year was correct.

In the decree, the chancellor mentioned the remarriage of each of the parties and their respective residences. He also mentioned the bitter feeling between the father and mother. The arguments between them, and between Mr. Holt and Mr. Taylor—all of which occurred over visitation rights with the child—are detailed in the record. The chancellor evidently perceived that these difficulties would affect the personality of the child and his attitude toward his parents.

* * *

For a court to choose, in a custody case, between the mother and father, the respective personalities of the parents are vital. It is in this realm that personal observation is of inestimable value. As was stated in *Wilson* v. *Wilson*, 228 Ark. 789, 310 S. W. 2d 500 (1958): "We know of no type of case wherein the personal observations of the court mean more than in a child custody case." The chancellor's experi-

ences with these parents began in late 1962. In the succeeding years he entered at least ten orders touching on matters of divorce, child custody, and support money. These experiences afforded the chancellor opportunities to reach wise conclusions respecting the moral fiber of, these parents. We are certainly justified in assuming that the chancellor's knowledge which he gained from the initial divorce proceedings, together with his four years' experience with these people, supports his conclusions with respect to custody. In cases of this nature, particular weight is given to the findings of the chancellor, *Cheek* v. *Cheek,* 232 Ark. 1, 334 S. W. 2d 669 (1960).

We probably have not had any case since that decision to which application of its precepts would be more appropriate than this one. Rather than the usual appellate review and instead of following the sound doctrine of *Holt* v. *Taylor,* I respectfully submit the court has substituted its judgment for that of the chancellor as to whether there had been a change in circumstances between January 5, 1971, and the date of the hearing. The majority does not even say that the chancellor's findings were clearly against the preponderance of the evidence. In my opinion, they clearly are not. These findings were that there had been no substantial change in the condition of the child or the parties since January 5, 1971.

The court refused to change the custody, but gave the mother visitation rights on two nights, per week. There was testimony that:

The father had an individual bedroom for this five-year-old child; the child had a good relationship with both parents and was happy with either; she attended kindergarten at a church five days per week and was registered in a Catholic school; she was left with her paternal grandmother when the father had to work overtime; the child was in good health; the father and daughter attended the Catholic church in Van Buren; the child is clean, happy and well-adjusted with the father; there was a feeling of hostility between the father and the mother's newly

acquired husband, and the latter had threatened the former.

Neighboring ladies testified that the child would be better off with her father. Perhaps the most telling bit of evidence—one which should tip the balance, if there is any doubt where the preponderance lies—was the testimony of the maternal grandfather, a Baptist preacher, that the child was better off remaining with her father. This testimony is of added weight because the stepfather chose not to appear or testify, and left the mother with only evidence of his general and credit reputation to speak for him. We recently and appropriately considered significant the failure of a new stepfather to appear and testify. See *Jackson* v. *Smith*, 250 Ark. 923, 467 S. W. 2d 704.

The chancellor in this case evidenced the same concern for the future as the chancellor in *Holt* v. *Taylor*. He requested the welfare department to keep abreast of the situation, directed the parties (including Mr. Settle) to seek counseling from a marriage counselor, and retained jurisdiction for further orders. The same judge granted the divorce and ordered a change in custody four months later, but subsequent to the mother's remarriage. This presents a reasonable parallel to the chancellor's superior position in *Holt* v. *Taylor*.

I humbly suggest that the court's preaching in *Holt* v. *Taylor* far surpasses its practice here.

I would affirm the decree.