Denna PLUM *v.* James PLUM

5-5857                                    478 S.W. 2d 882

Opinion delivered April 17, 1972

*Darrell Johnson,* for appellant.

*Carl Creekmore,* for appellee.

CONLEY BYRD, Justice. In a 1969 divorce decree, custody of the parties' three children was awarded to appellant Denna Plum. The eldest child, Connie Plum, age 14, elected to remain with her father, appellee James Plum. Thereafter the mother petitioned the court to permit her to remove the two younger children, Ricky, age 8½ and Tanya age 3½ to Hixson, Tennessee. Appellee resisted the motion and counterclaimed for a change of custody. After a hearing and an interview with the children, the chancellor awarded Ricky's custody to the father and apparently granted permission to remove Tanya. Denna Plum appeals.

The record shows that following the divorce, appellant and the two younger children lived in Alma until appellant's father died. Appellant then moved to her mother's in Fort Smith. In May of 1970, appellant went to a Licensed Practical Nurse's school and graduated on May 21, 1971. As an LPN in Fort Smith, she earns $2.32 per hour. In Hixson, Tennessee, she has a job paying $2.76 per hour and a place to live within walking distance of a school. On cross-examination it was established that Ricky flunked the second grade after he was moved from Alma to Fort Smith.

James Plum testified that he would be denied visitation rights if appellant were permitted to take the children to Hixson, Tennessee, because of the 700 mile distance. On cross-examination it was established that he did not attend church and would not require his children to attend. On one occasion appellee went to appellant's home to pick up the children at 5:30 p.m., not knowing that the children had been attending Vacation Bible School. When appellant informed him that he could not take the children until after 10:00 p.m. because of the Bible School's graduation exercises, appellee inquired of Ricky if he wanted to go or stay and upon being informed that he wanted to go, appellee then took the children over appellant's protest.

Appellant's mother testified that she planned to live with appellant in Hixson, Tennessee, and help care for the children. On cross-examination it appeared that the mother had had a stroke from which she had recovered except for some paralysis in her hand.

We pointed out in *Johnston* v. *Johnston*, 225 Ark. 453, 283 S.W. 2d 151 (1955), that the party seeking a change of custody must assume the burden of showing such changed conditions as would justify a modification in the minor's interest. The burden here was upon appellee, who sought the change in custody, to show such changed conditions as would justify modification of the decree. We can find no evidence to jusitfy the modification.

On the record made, appellant is obviously entitled to take the children with her to Hixson, Tennessee. Of course appellee will be entitled to reasonable visitation rights which must be adjusted to thet the circumstances.

Reversed and remanded.

FOGLEMAN and JONES, JJ., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. I dissent for the same basic reasons given for my dissent in *Settle* v. *Meyers*, 251 Ark. 532, 473 S.W. 2d 434. I do not see how the majority can say that the findings of the chancellor in this case are clearly against the preponderance of the evidence. The decree contains the following findings:

That it would be in the best interest and welfare of the minor children that the custody of sixteen (16) year old daughter, Connie Plum, and the eight (8) year old son, Ricky Plum, be placed with their father, James Plum, subject to the right of reasonable visitation being reserved to the plaintiff, Denna Plum, at any and all reasonable times, including one (1) week of the school vacation, during the Christmas Holidays and the summer months, commencing one (1) week after the end of school and continuing until one (1) week prior to commencement of school for the next school term.

The court's letter opinion on which the decree was based contained the following:

After having had an opportunity to see, hear and observe the parties and their witnesses testify in this matter, and to have had an opportunity to interview the oldest child, a sixteen year old daughter, and the middle child, an eight year old son, and to review the pleadings, testimony and evidence in this case, it is the Court's Opinion that it would be in the best interest and welfare of the minor children that the custody of the sixteen year old daughter and the eight year old son be placed with their father, the Defendant James Plum ***. In so doing, the Court is considering the request and desires of the sixteen year old daughter and, although there is a similar request of the eight year old son, the Court believes that in his best interest that he have the stability of the homelife with his father and grandparents and older sister, along with the encouragement thereof to stabilize his progress in school and relieve him of the apparent nervousness and emotional trauma created by the conflict resulting from the divorce and the apprehension of being removed from a known environment.

In the original decree the chancellor approved the arrangement by which the eldest child, a 14-year-old daughter, was allowed to remain with her father and paternal grandparents in accordance with her expressed desires, and with the consent of her mother, appellant here. He later awarded the custody of this child to her father, the appellee, and restrained the parties from removing any of the children from the jurisdiction of the court without court approval. Appellant did not ask that she be permitted to take this eldest child with her. The younger children are now nine and four years of age. The nine-year-old boy, while in the custody of his mother and maternal grandmother, failed the second grade, even though his mother and a neighbor each gave him as much help as she could. No real reason appears for appellant's not objecting to the older daughter living with her father and grandfather, but objecting to the boy's doing so. The mother and the 83-year-old maternal grandmother plan to take the boy and younger daughter to live in a two-bedroom apartment. While appellant is at work, this grandmother who has suffered a stroke is to be the custodian of this nine-year-old boy as well as his younger sister.

The father testified that he would find visitation with his children almost impossible if they were 675 miles away, as they will be. He lives with his parents in a two-bedroom house to which two bedrooms are being added. His mother is 61 and father is 65. Neither is now employed. The chancellor saw and observed both grandmothers when they testified. One of these will have as much to do with the care of this boy as the parent having his custody.

The change of residence of the mother and the boy's failure in school are certainly changes of circumstances warranting the court's action to review the situation. If this concerned mother is perfectly willing for the father and his parents to have the custody of a teen-age daughter, I cannot see how it would be objectionable for them to have a boy, who may need a father as much as he needs a mother. The matter of divided custody should not be of any significance. Custody is already divided. Who is to say that a nine-year-old boy should be with his four-year-old sister, rather than his 16-year-old sister? There is evidence that all the children get along well together.

I humbly submit that there was ample evidence to support a finding of such a change of circumstances as would justify a change in Ricky's custody. I find nothing to sustain a holding that the chancellor, who had considerable opportunity to observe all the parties in the three hearings before him, held contrary to the preponderance of evidence.

I think that our opinion in *Holt* v. *Taylor*, 242 Ark. 292, 413 S.W. 2d 52, was well reasoned and sound, when written. I do not think it has become obsolete, yet I feel that its teachings are being ignored. Even as late as *Standridge* v. *Standridge*, 248 Ark. 392, 451 S.W. 2d 726, we emphasized our unwillingness to substitute our judgment for the chancellor's upon the basis of our mere reading of the printed page contrasted with his infinitely better opportunity for reaching a wise decision. Because I am still unwilling to do so, I would affirm the decree.

I am authorized to state that Mr. Justice Jones joins in this dissent.