SHERRYE HOLMES HAMPTON v. ALTON R. HAMPTON

4700                                                      433 S.W. 2d 149

Opinion Delivered November 4, 1968

*James C. Johnson* for appellant.

*Macom, Moorhead & Green* for appellee.

J. FRED JONES, Justice.    This appeal is from an order of the Arkansas County Chancery Court modifying a divorce decree as to the visitation rights of the father with the couple's three year old daughter.

Sherrye and Alton Hampton were married on October 21, 1962, when she was sixteen and he was nine-

teen years of age. They lived together on his father's rice farm near DeWitt for about two years when their child, Monti, was born. Alton was overseas for about two years as a member of the armed forces and while he was away Sherrye and the child lived with her parents who operate a grocery store in Des Arc, Arkansas. Upon Alton's return from overseas, the couple continued to live on his father's farm where Alton worked on the farm for daily wages. They obtained a divorce on December 2, 1966; the custody of the child was awarded to the mother and visitation rights of two Saturdays each month were awarded to the father. After the divorce, Sherrye entered Little Rock University. She kept the child with her part of the time in Little Rock and left it with her mother part of the time in Des Arc. Alton continued to work on his father's farm near DeWitt and attempted to visit the child two Saturdays each month as provided in the decree.

The record indicates that much of the difficulty causing the separation and divorce in the first place had to do with the immature attitude each parent took toward the other in relation to the welfare of their child. The divorce did not soften their attitude toward each other. The child was allergic to organic dusts, particularly from soybeans and rice but this allergy was controlled by medication. The parents were allergic to each other and no attempt was made by either to control this allergy. As a matter of fact this allergy was aggravated to some extent by Sherrye's remarriage. Alton attemped to exercise his visitation rights under the court order as if the order was directed *to him* and Sherrye flouted the court order as if she had not even heard of it and as if it did not apply to her at all. On several occasions Alton would drive from DeWitt to Little Rock to visit the child and Sherrye would deny him the privilege, usually on the pretext that the child was ill because of allergy or had an appointment with a doctor.

Sherrye's remarriage contributed nothing but complications to the exercise of Alton's rights of visitation and following a contempt citation hearing on March 17, 1967, the chancellor held Sherrye in contempt of court for failure to comply with the visitation orders, but deferred further action for a period of sixty days, during which time Sherrye was given further opportunity to comply with the previous orders pertaining to the visitation rights. Additional hearing was had on October 24, 1967, at which time the chancellor modified the original decree by authorizing Alton to have the child in his home two weekends out of each month. It is from this order that Sherrye has perfected her appeal to this court and she relies on the following point for reversal:

> "The court erred in disregarding the health and physical well-being of the child by increasing the visitation rights of the father."

Appellant's point is not supported by the record and we find no merit in this appeal. The chancellor went to unusual length and exhibited commendable patience and understanding in arriving at his decision in this case. The chancellor made it clear throughout this entire case that the welfare of the child was his primary concern and we are of the opinion that he properly evaluated the medical evidence in this case when he said:

> "Now with all this proof here, doctor's deposition and Dr. Henderson in person, all of this proof about these allergies and one thing and the other and I don't question that at all but *there hasn't been one scintilla of evidence offered here that the times the child did go over to the farm* [of the father in DeWitt] *that she was any worse when she came back.* * * * The court has recognized the mother's claim by giving the custody of the child to the mother and providing that the father could visit the child, have the child visit in the home twice a month. *Now, I would be much*

*more impressed by the medical proof here if it wasn't the fact that the child is going back and forth from Des Arc to Little Rock, which is not much less distance than to DeWitt and it is a known fact that rice and soybeans are major crops in the Des Arc area the same as they are here.* [Arkansas County].'' (Emphasis supplied.)

There is no rule more firmly established than the rule that chancery cases are tried de novo on appeal to this court, and the chancellor's decree will be affirmed unless it is clearly against the preponderance of the evidence or the chancellor has abused his discretion. The oft-stated reasoning that a chancellor who sees the parties and their witnesses and observes their demeanor while testifying, is in a better position to evaluate the credibility of their testimony, applies with special force in a case where child custody is involved. *Cheek* v. *Cheek*, 232 Ark. 1, 334 S.W. 2d 669. In *Holt* v. *Taylor*, 242 Ark. 292, 413 S.W. 2d 52, we said:

"For a court to choose, in a custody case, between the mother and father, the respective personalities of the parents are vital. It is in this realm that personal observation is of inestimable value. As we stated in *Wilson* v. *Wilson*, 228 Ark. 789, 310 S.W. 2d 500: 'We know of no type of case wherein the personal observations of the court mean more than in a child custody case.' "

The chancellor's experience with these parents began with the divorce proceedings on December 7, 1966, and continued through two custody hearings on March 17, 1967, and October 24, 1967. The chancellor was well aware of the child's allergic condition from the evidence of unpaid medical bills, as well as the depositions and personal testimony of the doctors presented at the court hearing. The chancellor did not abuse his discretion in this case and his order is not against the preponderance of the evidence.

The order is affirmed.