## NORMA RICHARDSON CAMPBELL *v.* SAM M. RICHARDSON, III

5-5554                                    468 S. W. 2d 248

Opinion delivered June 28, 1971

*Allen, Young & Bogard* and *Gaughan, Laney, Barnes & Roberts,* for appellant.

*Brown, Compton, Prewett & Dickens,* for appellee.

FRANK HOLT, Justice. This action was instituted by the father, appellee, to secure custody of his minor son who, by agreement, had been in the custody of his mother, appellant, since July of 1967 when appellee secured a divorce. At the time of the divorce, the minor, Samuel Richardson, IV, was eight years old and was residing with his parents in El Dorado where appellee and appellant were closely acquainted with another married couple, William and Sara Campbell. The Campbells were divorced in May of 1967, two months prior to the divorce of appellant and appellee. Mrs. Campbell was awarded custody of the Campbell boys, ages 5 and 7. On October 26, 1968, Sam Richardson, III, appellee, married Sara Campbell and they have continued to reside in El Dorado. On January 4, 1970, Norma Richardson, appellant, married William Campbell and almost immediately moved, with her son, to Little Rock where Mr. Campbell was and still is employed. Sam Richardson, III then filed a petition for a change of custody of his son from Norma Richardson Campbell to himself. After a lengthy hearing the chancellor, on July 2, 1970, awarded custody to the appellee-father. On appeal appellant contends for reversal that "there was no showing of a change in circumstances occurring since entry of the original decree of divorce as would justify modifi-

cation of that decree; and that the welfare of the child is best served by having the custody remain in the mother." We cannot agree with appellant's contentions.

During the two and one-half years appellant and her son lived in El Dorado following the divorce, the child had the company and close relationship of his father, grandparents, and friends. It appears that the appellee enjoyed very liberal visitation rights and was seeing his child one or two nights during the week and also on the weekends when they attended church together regularly. Immediately following the divorce, as before, Sammy also spent a great deal of time, including vacations, with his paternal grandparents; however, this relationship was gradually curtailed. During the four and one-half months that Sammy resided with appellant in Little Rock, he spent about one weekend a month in El Dorado with appellee.

Subsequent to her divorce, it appears undisputed that appellant had an affair with Mr. Campbell, her present husband; however, nothing of this relationship was ever revealed to Sammy. She stated that when Mr. Campbell was in her home it was at the invitation of Sammy and that he had shared Sammy's bedroom with him. The appellee adduced evidence that Mr. Campbell's car was frequently observed at appellant's house late at night and early in the morning. There was also evidence presented that appellant had a clandestine affair with a married man, a co-employee at a local mental health center, with the expectation of eventual marriage.

Upon appellant's marriage to Mr. Campbell, she, her husband, and Sammy resided in one of the nicest apartment complexes in Little Rock. Appellant secured employment as a medical secretary and was at home within thirty minutes after her son's school hours. An experienced babysitter attended him until she arrived. The stepfather, who had suffered financial reverses, was repaying his debts from an estimated $18-20,000 per year income and expressed a strong desire that appellant retain custody of Sammy. There was evidence that appellant and the stepfather were devoted to Sammy and

spent a great amount of time and effort in attempts to help him adjust to his new surroundings by assisting him in his studies and affording him a comfortable home and recreational activities. However, Sammy did not adjust to his new environment; in fact, there was a drastic drop in his school grades. In El Dorado he had received "A's" and "B's" whereas during the four and one-half months he was in Little Rock he received mostly "D's" or failing grades. Also, Sammy was late to school 14 times.

Dr. Donald Martin, a counselor in psychology, at the request of appellee, saw Sammy on February 14, 1970, to determine his emotional problems. This witness stated that he also forwarded a drawing test to Sammy on May 2, 1970. According to Dr. Martin, Sammy was depressed because of anxiety which affected his ability to concentrate and also, to ignore what goes on around him and that these difficulties would cause his school grades to drop. He further stated that the testing showed Sammy had a very deep attachment for his father who showed warmth and understanding and that he was fearful of his mother, mainly that she would harm his father. He stated that Sammy needs someone who accepts, understands, and loves him so that he can get his confidence built up; that Sammy must be stabilized as quickly as possible; and that his father would be the one to fulfill his son's needs.

Dr. Patrick Caffey, a clinical psychologist with a PhD, testified that Dr. Martin conducted a very "limited" evaluation and is not trained to work with children; however, that all the tests given by Dr. Martin were recognized in the field of psychology with the exception of one. Dr. Caffey stated that the two and one-half-hour testing session conducted by Dr. Martin with Sammy only was inadequate; that generally six or seven series of tests are given before a competent diagnosis can be made and only then after adequate consultation with the child and both parents. Dr. Caffey further stated that he was acquainted with the parties; that he was a friend of appellant's; that he had seen Sammy casually on two or three occasions when the child was with appellant;

that the child did not seem distressed; that he seemed overly affectionate; and that there was nothing to suggest any need for counseling the child. He further stated that he was familiar with the school system in El Dorado and in Little Rock; that the Little Rock school system was more difficult than El Dorado's; and that following the change of schools the drop in Sammy's grades could be expected until he adjusted.

Appellant, her present husband, parents, and numerous friends testified that appellant and her son had a very close mother-son relationship and her witnesses said that they had observed nothing detrimental to his welfare nor anything that would indicate the boy was not adjusting to his change in environment.

Numerous witnesses attested to appellee being a respected and successful businessman; a church and civic leader; an exemplary father who spent time with his son by assisting him in his school studies and participating with him in such recreational activities as baseball, golf, and horseback riding.

Appellee's present wife, the stepmother who is a school teacher, testified that she wanted Sammy in her home; that her two boys, aged 8 and 10 at the time of the hearing, were compatible with Sammy; and that she would no longer work after her expected child was born within a few months.

According to the transcript of an in-chambers proceeding in which the chancellor questioned Sammy, by agreement and in the presence of counsel for each of the parties, Sammy testified that, although he loved his mother, he preferred to live with his father.

An appeal from the chancery court is reviewed de novo; however, the decision of the chancellor will be affirmed unless it is clearly against the preponderance of the evidence. *Hampton* v. *Hampton,* 245 Ark. 579, 433 S. W. 2d 149 (1968).

Appellant correctly asserts that the rule to be ap-

plied in suits seeking a modification of a custody order is set out in *Myers* v. *Myers,* 207 Ark. 169, 179 S. W. 2d 865 (1944). There we said:

"\* \* \* While there is continuing authority in the court granting a decree of divorce to revise or alter orders contained in such decree affecting the custody and control of the minor children of the parties, such orders cannot be changed without proof showing a change in circumstances from those existing at the time of the original order, which changed circumstances, when considered from the standpoint of the child's welfare, are such as to require or justify the transfer of custody from one parent to the other."

Further, in 27B C. J. S. Divorce § 317(2) it is stated:

"\* \* \* The mere fact that conditions have changed since the divorce of the parents is insufficient in itself to warrant a modification of the custody order. Therefore, it is insufficient to establish some change in circumstances or a slight change in conditions; there must be a showing of material, permanent, and substantial change in the circumstances or conditions of the parties, affecting the welfare of the children to a substantial or material extent, the two issues being closely intertwined."

However, in making this determination the best interest and welfare of the child are the paramount considerations. *Holt* v. *Taylor,* 242 Ark. 292, 413 S. W. 2d 52 (1967). Sammy, the twelve-year-old boy, testified that, although he loved his mother, he wanted to live in El Dorado, and that he felt he would receive better care from his father and stepmother. In *Aaron* v. *Aaron,* 228 Ark. 27, 305 S. W. 2d 550 (1957), we quoted with approval:

"\* \* \* the wishes of the children were consulted, and, while their preference is not of controlling importance, it is a circumstance which cannot be ignored \* \* \*."

Furthermore, in *Beene* v. *Beene*, 64 Ark. 518, 43 S. W. 968 (1898), we said:

"* * * The elder of the boys, now about nine years old, has probably arrived at that age when a father's peculiar character of oversight and control may begin to be more necessary than the mother's * * *."

We think this reasoning is applicable to the case at bar.

In *Qualls* v. *Qualls*, 250 Ark. 328, 465 S. W. 2d 110 (1971), a case involving an appeal from an order granting custody of a nine-year-old boy to his father, we affirmed and said:

"For reversal the appellant relies principally upon the law's inclination to favor the mother in custody cases involving very young children. That principle, however, loses some of its force as the child grows older and is not so strong in the case of a ten-year-old boy as it would have been much earlier in the child's life. Moreover, the trial judge saw fit to award custody to the father in spite of the rule in question. We view this case much as we did the situation in *Wilson* v. *Wilson*, 228 Ark. 789, 310 S. W. 2d 500 (1958) where we said: 'We know of no type of case wherein the personal observations of the court mean more than in a child custody case. The trial judge had an opportunity that we do not have, *i. e.*, to observe these litigants and determine from their manner, as well as their testimony, their apparent interest and affection, or lack of affection for the child. Under our oft repeated rule that we will not disturb the findings of the chancellor unless they are clearly against the preponderance of the evidence, we affirm this temporary order.' We are of a similar opinion in the case at bar."

Likewise, in the case at bar we certainly cannot say that the chancellor's findings are against the preponderance of the evidence.

Affirmed.

BYRD, J., dissents.