ANDREW JACKSON ROWELL *v.* EDITH PRICE ROWELL

5-5987                                              482 S.W. 2d 109

Opinion delivered July 10, 1972

*Willis V. Lewis,* for appellant.

*Howell, Price, Howell & Barron,* for appellee.

J. FRED JONES, Justice. This is an appeal by Andrew Jackson Rowell from a decree of the Pulaski County Chancery Court wherein Edith Price Rowell was awarded separate maintanance on her petition therefor, and Mr. Rowell's counter petition for an absolute divorce was denied and dismissed. The point on which Mr. Rowell relies for reversal is designated in his brief as follows:

"That the evidence produced by the appellant herein and the corroboration thereof was more than sufficient to entitle the appellant to a divorce."

The question before us on this appeal is not a question of what decree we would have entered had we been sitting in the place of the chancellor, but the question before us is whether the chancellor's decree is against

the preponderance of the evidence. We have many times pointed out that in chancery cases we do not disturb the chancellor's decree on factual issues unless it is clearly against the preponderance of the evidence. *Campbell* v. *Richardson*, 250 Ark. 1130, 468 S.W. 2d 248.

The record in this case indicates a rather stormy marital relationship between the parties dating at least as far back as 1969. The record indicates that numerous petitions were filed by Mrs. Rowell for separate maintenance and for orders citing Mr. Rowell for contempt in failing to comply with court orders. Finally, on July 13, 1971, Mr. Rowell filed his counterclaim for divorce in connection with his answer of general denial to Mrs. Rowell's last complaint for separate maintenance filed on July 1, 1971. The parties effected their last reconciliation on June 17, 1970, when Mrs. Rowell's petition for separate maintenance was dismissed upon Mr. Rowell paying a $500 attorney's fee and accrued court costs as ordered by the chancellor.

In his counter petition designated "cross complaint," Mr. Rowell alleged as grounds for divorce that Mrs. Rowell "treated him with such indignities, systematically and habitually pursued, as to render and which did render his condition in life unbearable. That such conduct on her part consisted of fussing, nagging, quarreling, unmerited reproach, false accusations, contempt, studied neglect and open insult. That all these acts on her part have made it impossible for him to longer live with her."

Mrs. Rowell testified that during the previous five years Mr. Rowell was always cursing her and threatening to kill her. She testified that Mr. Rowell physically assaulted her two or three different times and that on one occasion he knocked her against a wall bruising her breast, side and legs. She said that Mr. Rowell had an extremely high temper and that on one occasion he struck her in the mouth and broke off a tooth. She testified that Mr. Rowell was extremely jealous of her; that he unjustly and wrongfully accused her of unseemly conduct, and even accused her of hugging and kissing the preacher. Mrs. Rowell denied that she had ever done anything to bring about or justify the treatment she received from Mr. Rowell.

Harry Lee Rowell, the 27 year old son of Mr. and Mrs. Rowell, testified that he had been working for a supply company for a year and a half but prior to that he worked for his father in Mr. Rowell's welding and wrecker service business. He said that he quit working for his father because his father and mother were throwing so much money away in divorce courts and attorney's fees. He said that his mother worked in the business and answered the telephone; that on some occasions Mrs. Rowell would accept less money for work performed than the amount marked on the article worked on and an argument would then ensue between his father and mother. He testified that he had seen his father abuse his mother from time to time when he was a child and living with them. Young Rowell seems to attribute most of his parents' recent difficulties to the fact that they had been offered a considerable amount of money for some property they own as an estate by the entirety and Mrs. Rowell refuses to sell or sign a deed. He testified that his father had offered Mr. Rowell "everything in the book" to get her to agree to sell the property; that he offered her $75,000 for her part with an automobile and the home in which they lived, but that she refused to sell.

On cross-examination young Rowell said that he left home when he was 17 or 18 years of age because his mother nagged at him about his clothing and first one thing and another. He testified that his mother and father have always quarreled off and on; that he married in 1966 and his mother and father quarreled with each other at that time. He testified that both his father and mother run to him with their complaints against the other and that he would like to see the whole matter settled between them.

The appellant, Mr. Rowell, testified that after he and Mrs. Rowell went back together in December, 1969, they lived together until October 30, 1970, when Mrs. Rowell told him to get his clothes and leave. He said on this occasion Mrs. Rowell had been on to him about the yard. He said that he and Mrs. Rowell could have gotten $200,000 for some property they own as an estate by the entirety, but that Mrs. Rowell would not let him sell. He said Mrs.

Rowell complained about the way he cut the grass in their yard; that when he tried to cut the grass Mrs. Rowell would tell him to cut it some other way, and that he couldn't even cut the grass to please her. He said that when he would come home from work Mrs. Rowell would start lowering the windows and closing the doors and tell him all the neighbors would hear him. He said he never did threaten Mrs. Rowell with physical violence except on one occasion prior to their last reconciliation. He said that on one occasion he was sitting in his room doing bookwork and Mrs. Rowell pointed a loaded revolver at him. He said that she had both fingers on the trigger of the weapon and threatened to kill him. He said he hadn't said anything to upset Mrs. Rowell but that when she threatened to kill him with the revolver, he jerked it from her hands and told her he would knock her down and she wouldn't get up if she did it again. He said that following their last reconciliation in 1970, he wanted to attend church and go to the altar, but that Mrs. Rowell refused to go to church with him. He said that a couple of Sundays later they did go to church together and the first thing Mrs. Rowell did was to hug and kiss the preacher. He testified that he was not jealous of Mrs. Rowell but that Mrs. Rowell was jealous of him. He said that Mrs. Rowell likes to make fun of him and enjoys coming to his shop and embarrassing him. He testified that his wife would come to his shop and sit near the cold drink box where customers and employees would be unable to obtain cold drinks and that she would start an argument in the presence of his employees. He testified that Mrs. Rowell would wear slacks to his shop and would "shake and shimmy" before his employees. He said that on one such occasion one of his employees and another man went out of his place of business to keep from watching her. He said that when his wife first told him to get his clothes and leave, he continued to live with her for approximately one month and that when she again told him to get his clothes and leave, he did so.

Mr. Charles Pinkerton testified that he worked for Mr. Rowell part-time; that he was usually busy with his duties and did not listen to the arguments between Mr. and Mrs. Rowell. He said that when he was helping Mr.

Rowell move out of the place about two years previously, he did see Mrs. Rowell kick at Mr. Rowell but there was no contact made. He said that he had heard Mrs. Rowell make derogatory remarks but that he did not know what they were. He said that Mr. and Mrs. Rowell were both abusive toward each other in their language. On cross-examination, under questioning by the chancellor, this witness testified that the one occasion when he saw Mrs. Rowell kick at Mr. Rowell when he was helping Mr. Rowell move out of the premises, occurred prior to their subsequent reconciliation.

The chancellor awarded possession of the home and furniture to Mrs. Rowell and directed Mr. Rowell to continue making the monthly payments on the home as they become due. The chancellor directed Mr. Rowell to pay $45 per week as separate maintenance to Mrs. Rowell and made certain other orders pertaining to medical bills, a Pontiac automobile and proceeds from the sale of a truck which are not questioned on this appeal.

We appreciate the reasoning in appellant's argument as to the utter incompatibility of the parties and the futility of any hope for a future reconciliation as shown by the record in this case, but incompatibility is not a ground for divorce in Arkansas. From the overall evidence adduced at the trial in this case, it appears that most of the indignities complained of by both parties occurred prior to their reconciliation in October, 1970. It furthermore appears that such indignities as were proved by both parties were occasioned as much by the acts of one as by the acts of the other. See *Lewis* v. *Lewis*, 248 Ark. 621, 453 S.W. 2d 22. We are unable to say that the chancellor's decree is against the preponderance of the evidence in this case.

Affirmed.