# W. M. BRIGGS and Ann BRIGGS *v.*
# CAPITAL SAVINGS & LOAN ASSOCIATION

79-333                                      597 S.W. 2d 600
Supreme Court of Arkansas
Opinion delivered April 28, 1980

*Satterfield & Moody,* for appellants.

*Friday, Eldredge & Clark,* by: *George Pike, Jr.,* for appellee.

JOHN F. STROUD, Justice. This is a suit seeking to declare a promissory note usurious and therefore void the note and the mortgage securing it. The note is clearly usurious unless it falls within the exception of Public Law 93-501, commonly called the Brock Bill. The Chancellor found that the loan was a business loan within the language of the Brock Bill and granted judgment on the counterclaim of Capital Savings & Loan (hereinafter Capital) seeking foreclosure. We agree with the trial court and affirm the judgment.

In the fall of 1976, W. M. Briggs (hereinafter appellant) became involved in a business deal concerning the development of certain real property in Saline County, known as Spring Lake. L. D. Harris, a friend of appellant, and Gene Worsham, the owner of the property, approached appellant about the development plan. Appellant was a successful businessman, having been engaged in the business of building and selling fences for about 30 years. His participation in the project was vital due to his good credit rating, which was needed in seeking financing for the project. The papers were prepared to transfer the land to appellant's name, but he testified that all three men considered the venture over when they learned there were no H.U.D. funds available. Prior to learning this, Worsham's interest payment became due on a loan from Capital, secured by a mortgage on the Spring Lake property. Appellant testified that he agreed to loan Worsham the $6,250 needed for the payment, but appellant's check noted "advance on purchase price — Spring Lake," presumably pursuant to the Offer and Acceptance previously signed by both Worsham and appellant. The check, drawn on appellant's business account with Worthen Bank, was presented by Worsham to Capital for the payment on his loan.

Thereafter, in April of 1977, Harris and Worsham approached appellant again and asked him to loan Worsham $150,000 to prevent Worsham from having to default on his loan and lose the property. Appellant agreed and applied for

a loan of $110,000 from Capital, offering the property on which his fence company was located as security. After obtaining an appraisal and credit report, Capital agreed to the loan at an interest rate of 9.25%, plus one point as a loan origination fee. Appellant stated that he normally used Worthen Bank for all of his personal and business money matters, but borrowed from Capital in this case because they had made the loan to Worsham. Capital applied the loan proceeds together with appellant's separate funds to liquidate the Worsham debt. Worsham executed a note to appellant for $150,000, bearing interest at 10% per annum, payable in one year and secured by the Spring Lake property. Later, at appellant's request, Capital assigned their earlier line on the Spring Lake property to appellant rather than merely releasing the lien.

After making a few payments on his loan, appellant brought suit against Capital seeking to have the note and mortgage held as violative of Article 19, § 13 of the Arkansas Constitution prohibiting the charging of interest at a rate greater than 10% per annum. Capital filed a counterclaim against appellants for the unpaid balance of the note, plus interest and other costs, including attorney's fees. The parties agreed that the actual rate of interest charged on appellant's loan was 10.25%, but Capital contends the contract was not usurious due to 12 U.S.C.A. § 1730(E), known as the "Brock Bill," which provides:

> (a) If the applicable rate prescribed in this section exceeds the rate an insured institution would be permitted to charge in the absence of this section, such institution may *in the case of business* or agricultural *loans in the amount of $25,000 or more, notwithstanding any State constitution or statute,* which is hereby preempted for the purposes of this section, take, receive, reserve, and charge on any loan or discount made, or upon any note, bill of exchange, or other evidence of debt, interest at a rate of not more than 5 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal Reserve bank in the Federal Reserve district where the institution is located, and such interest may be taken in advance, reckoning the days for which the note, bill, or other evidence of debt has to run (Emphasis added.)

Appellant contends that the loan was not for business, but was merely a personal favor for a friend, and as such does not fall within the provisions of the Brock Bill. At trial, however, Capital produced the Loan Application signed by appellant with ink inserts indicating "commercial loan" and "cash to purchase property." Capital also introduced a sworn statement signed by appellant at closing entitled "Purpose of Loan Affidavit" which contained the words "to obtain operating capital" typed in a blank concerning the purpose of the loan. Claiming that the language was a cloak for usury, appellant testified that he would not have signed the affidavit if he had noticed it because the loan was not for operating capital. The affidavit also provided:

> I understand fully that this loan is a business (or agricultural) loan within the meaning of federal law permitting the charging of interest in excess of ten per cent (10%) per annum for business (or agricultural) loans in the amount of $25,000.00 or more, . . .

Capital asserts that the 10.25% rate of interest was permissible under the Brock Bill and, thus, the note and mortgage should be upheld. Although both parties filed motions for summary judgment, the Court heard the case on its merits and granted judgment on Capital's counterclaim in the amount of $110,210.80 plus interest, awarded a $2,500 attorney's fee, and ordered the property sold if the judgment was not paid within 10 days. From the decision of the chancellor, appellants (including Ann Briggs, wife of appellant, who was also a plaintiff, but did not testify) bring this appeal.

Neither party questions the constitutionality of the Brock Bill, and both parties acknowledge that 10.25% interest was a permissible rate of interest under the Brock Bill at the time this loan was made. Appellants' points for reversal can be condensed to two: (1) the trial court erred in finding that the loan in question was for business purposes, and (2) the trial court erred in finding that any transaction involving

real estate is "business." Addressing the latter point first, we agree with appellants that the trial court overreached in its finding that all real estate transactions are "business" ventures. The purchase of a home by an individual may not be a "business" loan within the meaning contemplated by the Brock Bill. However, this dictum in the decree of the trial court did not prejudice the rights of appellants, nor is it reversible error if the evidence supports the court's finding that the loan in the present case was for a "business" purpose. Therefore, the only real question to be decided on this appeal is whether the trial court erred in finding that the loan in this case was for a "business" purpose.

There was ample evidence to support the chancellor's finding that this loan was for business. Capital knew the loan was to be used to pay off the Worsham note as indicated specifically in their commitment letter written to appellants over three weeks before closing, and, in fact, Capital actually applied the loan proceeds to that indebtedness. Capital had in their loan file a copy of the Offer and Acceptance covering the Spring Lake property signed by appellant and Worsham; the $6,250 interest payment made to Capital by appellant on Worsham's note indicated "advance on purchase price — Spring Lake;" appellant's Loan Application noted "cash to purchase property;" and appellant admitted on the witness stand that he did not tell Capital that he was no longer trying to buy the property from Worsham. Capital had every reason to believe that appellant's payment of the Worsham note still related to a purchase of the Spring Lake property by appellant. A lender should be able to rely on the sworn statement of a borrower as to his intended use of the loan proceeds in determining the applicability of the Brock Bill.

While this court considers the evidence on a Chancery appeal *de novo,* it will not reverse the chancellor unless it is shown that the lower court decision is clearly contrary to a preponderance of the evidence. This court attaches substantial weight to the chancellor's findings on material issues of fact. *Digby* v. *Digby,* 263 Ark. 813, 567 S.W. 2d 290 (1978); *Minton* v. *McGowan,* 256 Ark. 726, 510 S.W. 2d 272 (1974); *Hampton* v. *Hampton,* 245 Ark. 579, 433 S.W. 2d 149 (1968).

The chancellor's decision was not contrary to the preponderance of the evidence.

Affirmed.