# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1755

_____

Patricia Jackson

*Plaintiff - Appellant*

v.

Allstate Insurance Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: January 14, 2015
Filed: May 7, 2015

_____

Before RILEY, Chief Judge, BEAM and COLLOTON, Circuit Judges.

_____

BEAM, Circuit Judge.

After a fire of incendiary origin destroyed her house, Patricia Jackson sued Allstate Insurance Company for denying her claim on a homeowner's insurance policy. Allstate asserted that Jackson's coverage was void because she burned the house or caused it to be burned and because she made material misrepresentations

regarding how the fire was started. The district court[1] granted Allstate's motion for partial summary judgment and denied Jackson's motion for summary judgment. The parties then proceeded to trial on Jackson's breach of contract claim, and the jury found in favor of Allstate. On appeal, Jackson asserts that the jury's verdict was not supported by sufficient evidence. Jackson also appeals the district court's dismissal of her remaining claims, its imposition of a one-day time limit for Jackson to present her case, numerous evidentiary and discovery rulings, and the court's denial of Jackson's request for a statutory penalty and attorney's fees related to Allstate's untimely attempt to pay her mortgage. We affirm.

## I.    BACKGROUND

Sometime between 6:00 a.m. and 6:40 a.m. on the morning of February 22, 2012, a fire severely damaged Jackson's house. Jackson testified that she spent the night of February 21 at her mother's house in Pine Bluff, Arkansas, and the trial record indicates that Jackson was at work during the time period in which the fire began. The Little Rock Fire Department was called to Jackson's residence and successfully put out the fire. Ryan Baker, an investigator for the Little Rock Fire Department's Fire Marshal's Division, was tasked with determining the cause of the fire. Baker ultimately classified the fire as an incendiary fire, meaning that it was started by human intervention. Baker reached this conclusion after he detected accelerants (i.e., gasoline) in multiple locations in the house and discovered that the fire's points of origin were inconsistent with any accidental causes. At trial, the parties agreed that the fire was a product of arson, and the district court instructed the jury to this effect.

---

[1]The Honorable Billy Roy Wilson, United States District Judge for the Eastern District of Arkansas.

Baker testified that he initially believed that Jackson might have been the victim of a hate crime, primarily because he discovered racially derogative graffiti in her garage and basement. However, Baker testified that as his investigation unfolded, Jackson's status quickly changed from that of victim to that of suspect. Baker testified that there were no signs of forced entry into Jackson's house, which indicated that whoever started the fire had a key. Baker also testified that Jackson's house was largely devoid of personal items, food, or furniture. Baker interviewed Jackson, and he claims she told him that she was the only person with access to the house, that she did not believe anyone had any motive to harm her, and that she was not missing any items of property. Baker also testified that Jackson told him that she was at work when the fire started. Baker therefore wrote a search warrant for her cell phone records to verify her whereabouts. These records indicated that, although Jackson was probably at work when the fire started, Alexander Henson, who is Jackson's coworker, attempted to call Jackson three times between 5:49 a.m. and 6:12 a.m. on the morning of the fire. Baker subsequently interviewed Henson, who denied that he tried to call Jackson. Jackson also told Baker that she never received any phone calls from Henson. However, Baker testified that the cell phone records clearly established that Henson's phone called Jackson's phone, and he therefore concluded that Henson and Jackson were lying about their contact on the morning of the fire. Baker ultimately concluded that, based upon the incendiary origin of the fire, the lack of evidence of forced entry or burglary, the dearth of items in the house, and Jackson's and Henson's alleged dishonesty regarding their contact, that Henson may have burned Jackson's home at her request. However, no criminal charges were filed against Henson or Jackson.

Wilbur Jordan, a member of Allstate's special investigative unit, testified that he conducted an independent investigation of the events surrounding the fire and concluded that Henson had burned Jackson's home. Allstate's investigators also discovered that Jackson was subject to a 2006 divorce decree that ordered her to sell her house, that she tried to sell the house for several years, and that she took the house

off the market after her efforts to sell were unsuccessful. Allstate thus denied Jackson's insurance claim based on two provisions in her policy, one of which excluded coverage for losses caused by "intentional or criminal acts of or at the direction of any insured person," (Intentional Acts Exclusion) and one that excluded coverage for any loss "in which any insured person has concealed or misrepresented any material fact" (Material Misrepresentations Exclusion). Following the denial, Jackson filed suit against Allstate, asserting, inter alia, claims for breach of contract, unjust enrichment, bad faith, and promissory and equitable estoppel. Allstate countered that Jackson's policy was void based on the Intentional Acts and Material Misrepresentations exclusions.

Shortly after Jackson filed suit, Allstate submitted a privilege log that sought to protect from disclosure numerous documents related to Jackson's policy claim that contained attorney-client communications and work product. Jackson filed a motion to compel production of these documents, and Allstate resisted the motion. Jackson requested that the district court review the documents in camera, and Allstate did not object to this request. After performing an in camera review, the district court held the documents were not discoverable and denied Jackson's motion.

After the parties completed substantial discovery, Allstate filed a motion for partial summary judgment with respect to all of Jackson's claims except for the breach of contract claim. Jackson resisted this motion and filed a motion for summary judgment on Allstate's affirmative defenses. The district court denied Jackson's motion for summary judgment after concluding there were material questions of fact regarding whether she was involved in burning her house and whether she made material misrepresentations. However, the district court granted Allstate's motion for partial summary judgment on the grounds that Jackson's unjust enrichment and estoppel claims were precluded under Arkansas law and that Jackson had failed to produce sufficient evidence that Allstate denied her claim in bad faith.

Before trial, the parties filed numerous motions in limine. Jackson moved to exclude all evidence related to Henson's cell phone records; the district court denied this motion. Jackson moved to exclude as inherently unreliable any evidence that involved the use of historical cell phone data to place individuals at certain locations. Jackson also attempted to exclude Allstate's expert, Kevin Levy, who was slated to testify on the subject of cell phone records, based on an untimely disclosed expert report. The district court denied both motions. Allstate moved to exclude one of Jackson's experts, David Van Puffelen, who was scheduled to testify that Allstate's investigation of the fire was inadequate because Allstate failed to establish that Jackson had a motive to cause the fire and because Allstate's investigator did not sufficiently rule out other possible suspects. The district court did not immediately rule on Allstate's motion but did indicate that it was "highly dubious" of the admissibility of Van Puffelen's testimony. Jackson filed a motion for reconsideration, which the district court denied. After Jackson again raised the issue at a pretrial conference, the district court ruled that Van Puffelen's testimony was inadmissible.

Approximately one month before trial was scheduled to begin, Jackson submitted a pretrial disclosure sheet which stated that Jackson planned to call approximately fifty witnesses and needed around thirty hours to examine them. The night before trial, the district court informed the parties that, because the case had been reduced to a simple contract dispute, the court would permit the parties one day each to present their case. Jackson objected to the one-day time limit, and the district court granted a continuance so that Jackson could submit a proffer of witnesses. Jackson submitted a proffer of twenty-four witnesses, and the court subsequently held a hearing to permit Jackson to explain why she was prejudiced by the one-day time limit. At the hearing, Jackson's counsel acknowledged that several of the witnesses would provide cumulative evidence and therefore could be excluded. The parties also discussed whether several witnesses who were scheduled to testify solely about Jackson's religious proclivities and her good moral character might also need to be excluded under Rules 403, 404, and 610 of the Federal Rules of Evidence. However,

the district court briefly noted the possibility that Jackson might be able to proffer character witnesses under Rule 608 if her character for truthfulness was attacked. The district court ultimately excluded twelve of Jackson's proffered witnesses on the grounds that their testimony would be cumulative or irrelevant. The court also excluded Jackson's five character witnesses under Rules 403, 404, and 610. The district court subsequently overruled Jackson's objection to the time limit but indicated that it would be open to revisiting its rulings on Jackson's witnesses and the time limit depending on how circumstances developed at trial.

Approximately one week after the district court excluded Jackson's proffered witnesses, Jackson served Allstate with twenty-three requests for admission. Roughly one-half of these requests related to issues that were materially disputed, such as whether Henson burned Jackson's house at her request. Allstate filed a motion for a protective order, complaining that the purpose of Jackson's requests for admission was to harass and annoy Allstate and that the requests were barred by the discovery deadline. The district court granted Allstate's motion and denied Jackson's subsequent motion for reconsideration.

The parties proceeded to trial on February 25, 2014. As noted above, Baker provided extensive testimony regarding his investigation of the fire, and Jackson's counsel thoroughly cross-examined Baker regarding the investigative methods he employed, his findings, and the possibility that Jackson's ex-husband or vandals may have caused the fire. Jackson testified during Allstate's case-in-chief, as well as her own, and she admitted that her mortgage payment consumed nearly 80% of her monthly income, that she was the only person with a key to her house, and that she was unaware of anyone who would want to harm her. Jackson also testified that several items were stolen from her house, including a large screen television and a family Bible. Jordan testified and was cross-examined regarding the results of Allstate's investigation of the fire and its decision to deny Jackson's claim.

Levy provided expert testimony regarding Jackson's and Henson's cell phone records. Levy testified that these records established that Henson's phone attempted to connect with Jackson's phone at least three times between 5:49 a.m. and 6:12 a.m. on the morning of the fire. Levy also testified that during each of these calls, Henson's cell phone connected to cell towers located close to Jackson's house. Levy provided extensive testimony regarding how and why cell phone calls typically connect to the tower located closest to the phone, and he discussed a field study that he performed to determine the approximate coverage area of the towers that carried the calls from Henson's phone on the morning of the fire. Based on the results of this field study, Levy concluded that Henson's phone was probably located somewhere near Jackson's home during the time period in which the fire started. In response to Levy's testimony, Jackson introduced deposition testimony from her own cellular technology expert, Russell Pope. Like Levy, Pope testified that Henson's phone attempted to connect with Jackson's phone at least three times before 6:12 a.m. on the morning of the fire[2] and that directional data from the cell tower indicated that the calls originated in the Cammack Village, Arkansas, area, which is located several miles from Jackson's house. Pope further testified that cell towers located in urban areas typically can only connect with cell phones located within a one-to-two mile radius of the tower.

Although Pope's testimony was mostly consistent with Levy's testimony, Allstate briefly re-called Baker in order to establish the time it takes to drive from Cammack Village to Jackson's house. Baker testified that, depending on traffic conditions, he could drive from Cammack Village to Jackson's house in ten minutes or less. Jackson's counsel attempted to impeach Baker's testimony by introducing a printout from Google Maps that allegedly estimated the drive time to be twenty

---

[2]Despite the fact that Jackson's expert testified that Henson's and Jackson's cell phones connected at least three times on the morning of the fire, both Henson and Jackson maintained that these calls never occurred.

minutes.  However, the district court excluded the printout after Allstate's counsel made a hearsay objection.

Prior to the close of Allstate's case-in-chief, the district court held a jury instructions conference with the parties to discuss their proposed jury instructions and to solicit their feedback regarding the final instructions the court planned to give.  At this conference, the court explicitly discussed Jury Instruction No. 8, which stated "(1) Allstate contends that Ms. Jackson either burned the insured property or caused the property to be burned [and] (2) Allstate contends that Ms. Jackson intentionally concealed or misrepresented material facts . . . relating to the investigation of the fire."  The only objection Jackson made to this instruction was that it should state that Allstate had the burden of proving both defenses.  The district court overruled this objection.

At the close of Allstate's case-in-chief, Jackson moved for judgment as a matter of law (JAML); the district court denied this motion.  Jackson renewed her motion before the case was submitted to the jury, but the district court denied this motion as well.  The district court provided Jury Instruction No. 8 and gave the jury a verdict form that indicated the jury should find for Allstate if it concluded "by the greater weight of the evidence that Patricia Jackson, or someone on her behalf, either burned her home or caused it to burn."  Jackson did not further object to Jury Instruction No. 8 or the verdict form.  The jury returned a verdict in favor of Allstate on the basis of Allstate's intentional acts defense.  The record before us contains no evidence that Jackson filed a renewed motion for JAML after the final entry of judgment in favor of Allstate.

## II.    DISCUSSION

### A.    Summary Judgment

Jackson asserts the district court erred by granting Allstate's motion for partial summary judgment on her claims for unjust enrichment, estoppel, and bad faith. Jackson also contends the district court should have granted summary judgment in her favor on Allstate's defense that Jackson personally burned her home. With respect to Jackson's motion for summary judgment, we typically "will not review a district court's denial of a motion for summary judgment after a trial on the merits," and we decline to do so here. Keup v. Hopkins, 596 F.3d 899, 904 (8th Cir. 2010) (quotation omitted). We do, however, review de novo the district court's grant of partial summary judgment in favor of Allstate, "viewing the evidence and drawing all reasonable inferences in favor of [Jackson]." Rose v. Flairty, 772 F.3d 552, 554 (8th Cir. 2014).

Jackson's unjust enrichment and estoppel claims are quasi-contractual in nature. Glenn Mech., Inc. v. S. Ark. Reg'l Health Ctr., Inc., 278 S.W.3d 583, 586 (Ark. Ct. App. 2008). Under Arkansas law, "the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi-contract for events arising out of the same subject matter." Servewell Plumbing, LLC v. Summit Contractors, Inc., 210 S.W.3d 101, 112 (Ark. 2005) (quotation omitted). However, when an enforceable written "contract does not fully address a subject, a court of equity may impose a remedy to further the ends of justice." QHG of Springdale, Inc. v. Archer, 373 S.W.3d 318, 324 (Ark. Ct. App. 2009) (quotation omitted).

Although Jackson does not dispute that her insurance policy with Allstate is an enforceable written contract, she contends the contract does not fully address the subject matter in this case. Specifically, Jackson asserts that she paid her mortgage

until October 2013, over one year following the loss, despite the fact that Allstate had a duty under her insurance policy to pay the mortgage. Jackson therefore contends that, because the policy is silent regarding her right to recover those mortgage payments, the district court improperly dismissed her equitable claims. However, because Jackson presumably had an ongoing obligation to pay her own mortgage, her post-fire mortgage payments were recoverable damages arising from Allstate's alleged breach of contract. See Optical Partners, Inc. v. Dang, 381 S.W.3d 46, 55 (Ark. 2011) ("In breach-of-contract cases, consequential damages are recoverable when they were fairly within the contemplation of the parties."). The district court therefore correctly held Jackson's policy fully addressed the subject matter at issue.

We also hold the district court did not err in dismissing Jackson's bad faith claim. Under Arkansas law, "a claim based on the tort of bad faith must include affirmative misconduct by the insurance company, without a good faith defense, and . . . the misconduct must be dishonest, malicious, or oppressive in an attempt to avoid its liability under [the] insurance policy." Aetna Cas. and Sur. Co. v. Broadway Arms Corp., 664 S.W.2d 463, 465 (Ark. 1984). The summary judgment record indicates that Allstate denied Jackson's claim based upon its receipt of substantial evidence that Jackson intentionally caused her house to be burned and materially misrepresented her role in causing the fire. In addition, Jackson's expert, Van Puffelen, testified in his deposition that, after reviewing the relevant evidence upon which Allstate relied in denying Jackson's claim, he could not say whether Allstate denied Jackson's claim in bad faith.[3] The district court thus correctly concluded the summary judgment

---

[3]Having carefully reviewed the record, it is clear that Van Puffelen's expert testimony was relevant only to the issue of whether Allstate denied Jackson's claim in bad faith. Accordingly, because the district court properly dismissed Jackson's bad faith claim, we hold the court did not abuse its discretion by excluding Van Puffelen's testimony at trial. Fed. R. Evid. 702(a); see Sappington v. Skyjack, Inc., 512 F.3d 440, 448 (8th Cir. 2008) (noting "[t]he district court's exclusion of expert testimony is reviewed for an abuse of discretion").

record was devoid of evidence indicating that Allstate's denial of Jackson's claim was "dishonest, malicious, or oppressive." Id. Accordingly, we affirm the district court's dismissal of Jackson's equitable claims and her bad faith claim.

## B. Discovery Rulings

Jackson contends the district court erred by denying her motion to compel production of the documents contained in Allstate's privilege log and by granting Allstate's motion for a protective order. "We review a district court's discovery rulings for abuse of discretion." Harvey v. Schoen, 245 F.3d 718, 720-21 (8th Cir. 2001). Allstate claims that the documents in its privilege log contained confidential attorney-client communications or work product, and Jackson seemingly does not dispute this contention. Jackson argues, however, that the documents are discoverable because they contain the mental impressions of the agents who denied her claim. We find this argument unpersuasive. Jackson does not sufficiently support her contention that these alleged "mental impressions" are discoverable, and our review of the record indicates the district court did not abuse its discretion by declaring these documents to be privileged. Ark. R. Evid. 502(b); see Union Cnty., Iowa v. Piper Jaffray & Co., 525 F.3d 643, 646 (8th Cir. 2008) (holding that in a diversity case "the determination of whether attorney-client privilege applies is governed by state law"); see Pittman v. Frazer, 129 F.3d 983, 988 (8th Cir. 1997) (holding ordinary work product may be discovered "only upon a showing of substantial need and an inability to secure the substantial equivalent of the items through alternate means without undue hardship") (internal quotation omitted). Finally, Jackson has provided no evidence that Allstate waived an applicable privilege with respect to any of the documents. See Pamida, Inc. v. E.S. Originals, Inc., 281 F.3d 726, 731-32 (8th Cir. 2002) (discussing waiver of work product privilege); Kinkead v. Union Nat'l Bank, 907 S.W.2d 154, 158 (Ark. Ct. App. 1995) (discussing waiver of attorney-client privilege). Accordingly, the district court did not abuse its discretion in denying Jackson's motion to compel.

We also cannot say that the district court abused its discretion by summarily granting Allstate's motion for a protective order. Rule 26(c)(1) of the Federal Rules of Civil Procedure permits a court, for good cause, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden." Fed. R. Civ. P. 26(c)(1). Here, on the eve of trial, Jackson served Allstate with dozens of requests to admit material facts that Jackson knew were in dispute. Although Jackson asserts the requests for admission were intended to "narrow the contested issues in this case," the frivolous nature of many of these requests indicates they were designed to annoy and burden Allstate. Accordingly, we affirm the district court's grant of Allstate's motion for a protective order.[4]

## C. Evidentiary Rulings

### 1. Time Limit and Jackson's Character Witnesses

Jackson asserts the district court erred by entering a pretrial order that excluded her character witnesses and by limiting her time to present evidence at trial. With respect to the district court's exclusion of her witnesses, Jackson concedes that, as a general matter, character evidence in civil cases, including evidence of religious beliefs or opinions, is inadmissible. Fed. R. Evid. 403, 404(a)(1) & 610. Jackson contends, however, that Allstate attacked her credibility as a witness, and that Rule 608(a) therefore entitled her to rebut this attack via her own character witnesses. Rule 608(a) provides that a witness's credibility may be attacked or supported by opinion or reputation testimony about the witness's character for truthfulness or untruthfulness; however, "evidence of truthful character is admissible only after the witness's character for truthfulness has been attacked." Fed. R. Evid. 608(a). "We

---

[4]We also note the requests for admission may have been untimely, as they were filed months after the discovery deadline expired. See Freeman v. City of Detroit, 274 F.R.D. 610, 612-13 (E.D. Mich. 2011) (citing several federal district court cases holding requests for admission are subject to discovery deadlines).

review the district court's decision to admit or exclude evidence under Rule 608(a) for an abuse of discretion." United States v. Jewell, 614 F.3d 911, 926 (8th Cir. 2010).

Jackson first argues that Allstate attacked her character for truthfulness as a witness by asserting its material misrepresentations defense. Jackson cites no case law in support of her contention, and we decline to hold that Allstate's assertion of this defense entitled Jackson to offer character evidence under Rule 608(a). Jackson alternatively argues that Allstate attacked her credibility when Baker testified that she was dishonest with him during his investigation. However, Jackson never objected to Baker's testimony under Rule 608(a). In addition, despite the district court's assurances that it would consider revising its evidentiary rulings depending on how the trial progressed, Jackson never offered a rebuttal witness to counter Baker's purported attack on her character for truthfulness. Thus, with respect to Baker's testimony, Jackson has failed to preserve any challenge based on Rule 608(a), and we find no plain error in the district court's decision to enter a pretrial order excluding Jackson's character witnesses. Chism v. CNH Am. LLC, 638 F.3d 637, 640 (8th Cir. 2011) (holding plain error review is appropriate when a "party fails to make a timely objection" to an evidentiary ruling).

We also hold the district court did not err by limiting Jackson's time to present evidence at trial. "Trial courts are permitted to impose reasonable time limits on the presentation of evidence to prevent undue delay, waste of time, or needless presentation of cumulative evidence." Harris v. Chand, 506 F.3d 1135, 1141 (8th Cir. 2007) (quotation omitted). "Trial management decisions are within the court's discretion and are reversed only for an abuse of discretion." Id. "Abuse may occur when a court excludes probative, noncumulative evidence simply because its introduction will cause delay." Id. (internal quotation omitted). Having closely reviewed the trial record, we conclude that the time limit did not prevent Jackson

from presenting any probative, noncumulative evidence. Accordingly, the district court did not abuse its discretion in limiting Jackson's time.

## 2.    Cell Phone Records and Google Maps Printout

Jackson next asserts the district court erred by denying her motion to exclude Levy's expert testimony because of a late disclosed supplemental expert report. "We review the district court's evidentiary rulings under an abuse of discretion standard." Townsend v. Bayer Corp., 774 F.3d 446, 460 (8th Cir. 2014). The record indicates that on December 2, 2013, Jackson took an extensive deposition of Levy in Little Rock, Arkansas. On the morning of the deposition, Levy conducted a field study of the cell towers located near Jackson's house. During the deposition, Levy disclosed to Jackson's counsel that he had conducted the field study, discussed the methodologies he utilized, and fully explained the results of the study. Approximately two weeks later, Levy provided Jackson with a supplemental expert report that summarized the same information Levy disclosed during his deposition.

Rule 37(c)(1) of the Federal Rules of Civil Procedure provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Allstate concedes that its disclosure of the report was untimely, but contends that its late disclosure was substantially justified and was harmless. We agree. The record indicates Jackson fully deposed Levy with respect to the field study and never requested the opportunity to take a supplemental deposition. See Wegener v. Johnson, 527 F.3d 687, 692 (8th Cir. 2008) (noting trial court has wide discretion in fashioning remedies or sanctions for violations of Rule 26(a) or (e)); Fed. R. Civ. P. 37(c)(1) (stating sanctions court may impose in addition to or instead of excluding the evidence). Jackson also fails to identify any information in the report that took her by surprise or that she needed to discuss with Levy in more detail.

-14-

We thus cannot say that the district court abused its discretion by denying Jackson's motion to exclude Levy's expert testimony.[5]

Jackson next contends the district court erred by refusing to take judicial notice of the Google Maps printout. It is undisputed that the printout was hearsay evidence, and Jackson has failed to establish that drive time estimates from Google Maps are so accurate that they cannot reasonably be questioned. Fed. R. Evid. 201(b) (identifying the kinds of facts that may be judicially noticed), 801 & 802. Accordingly, the district court did not abuse its discretion by excluding the Google Maps printout.

### 3.    Evidence of Criminal Charges

Jackson next argues the district court erred by excluding evidence that no criminal charges were filed with respect to the fire.[6] "As a general rule, evidence that criminal charges were not brought is inadmissible in a civil case arising out of the same events as the criminal charges." Goffstein v. State Farm Fire & Cas. Co., 764

---

[5]We also reject Jackson's contention that evidence regarding the use of historical cell phone data to identify the geographic area in which a phone was located at a given time is inherently unreliable. Federal courts have regularly admitted expert testimony regarding this type of evidence. E.g., United States v. Evans, 892 F. Supp. 2d 949, 955 (N.D. Ill. 2012); United States v. Benford, No. 2:09CR86, 2010 WL 2346305, at *2-3 (N.D. Ind. 2010). Furthermore, Jackson never raised a Daubert challenge with respect to "the *scientific validity* of the principles and methodology underlying [Levy's] testimony," and there is no evidence that the district court clearly erred by allowing Levy's testimony into the record. McKnight v. Johnson Controls, Inc., 36 F.3d 1396, 1407 (8th Cir. 1994) (citing Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 593-94 (1993)).

[6]The record indicates, however, that in response to a juror's question, the district court informed the jury that no criminal charges had been filed but instructed the jurors that they were not to consider this evidence during their deliberations.

F.2d 522, 524 (8th Cir. 1985). Jackson acknowledges this general rule, but she contends the evidence should have been admitted under the doctrine of curative admissibility. "The doctrine of curative admissibility allows a trial judge, in his discretion, to admit otherwise inadmissible evidence in order to rebut prejudicial evidence which has already been erroneously admitted." Id. (quotation omitted). Jackson contends the doctrine of curative admissibility is applicable here because Baker's investigation was so biased and unreliable that the district court erred by admitting evidence related to the investigation. However, having closely reviewed the record, we conclude that Baker's investigation was thorough and that he had sufficient grounds to investigate Jackson as an arson suspect. Accordingly, because the district court did not abuse its discretion by admitting Baker's testimony, Jackson has failed to meet "the prerequisites for curative admissibility." Id. at 525.

### D. Motions for JAML and Sufficiency of the Evidence

Jackson next challenges the sufficiency of the evidence supporting the jury's verdict. Specifically, Jackson contends that, because the jury returned a general verdict in favor of Allstate on its intentional acts defense, it is possible that the jury found that Jackson personally burned her home despite there being no evidence in the record to support such a finding. Jackson also asserts the district court erred by denying her pre-verdict motions for JAML with respect to the issue of whether she personally burned her house. However, we decline to consider either argument because Jackson failed to preserve these issues for appeal.

Although Jackson twice moved for JAML before the case was submitted to the jury, her failure to file a renewed motion for JAML after the entry of judgment in favor of Allstate precludes our review of her challenge to the sufficiency of the evidence supporting the verdict. If the trial court does not grant a motion for JAML made under Rule 50(a) "the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No

-16-

later than 28 days after the entry of judgment . . . the movant may file a renewed motion for [JAML]." Fed. R. Civ. P. 50(b). The "requirement of a timely application for judgment after verdict is not an idle motion but an essential part of [Rule 50]." EEOC v. S.W. Bell Tel., L.P., 550 F.3d 704, 710 (8th Cir. 2008) (internal quotations omitted). Indeed, the Supreme Court has held that when a party fails to file a renewed motion for JAML under Rule 50(b), "there [is] no basis for review of [the party's] sufficiency of the evidence challenge in the Court of Appeals." Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc., 546 U.S. 394, 407 (2006); see N.Y. Marine and Gen. Ins. Co. v. Cont'l Cement Co., 761 F.3d 830, 840 (8th Cir. 2014) ("A party cannot challenge the sufficiency of the evidence if it failed to file a postverdict motion under Rule 50(b) after the district court denied its Rule 50(a) motion."). Our precedent also establishes that Jackson's failure to file a Rule 50(b) motion precludes our review of the district court's denial of her pre-verdict motions for JAML because they too were based on a sufficiency of the evidence argument. S.W. Bell Tel., 550 F.3d at 709-10. We thus "conclude that [Jackson's] failure to file a Rule 50(b) motion after the entry of judgment leaves us without a basis to review [her] sufficiency of the evidence challenges." Id. at 711.

## E.  Motions Related to Allstate's Payment of Jackson's Mortgage

Jackson next argues the district court erred in denying her motion to require Allstate to pay her mortgage company, Nationstar Mortgage, LLC, and for an indicative ruling regarding the amount Allstate is required to pay. Jackson also contends she is entitled to a twelve percent statutory penalty and attorney's fees with respect to any payments Allstate makes to Nationstar. "We review the district court's findings of fact for clear error and [its] legal rulings de novo." Native Am. Council of Tribes v. Weber, 750 F.3d 742, 748 (8th Cir. 2014) (alteration in original) (internal quotation omitted). We review a denial of indicative relief for abuse of discretion. Dice Corp v. Bold Techs., 556 Fed. App'x 378, 384 (6th Cir. 2014).

Some additional factual background is helpful in evaluating the various issues Jackson raises with respect to her mortgage. Jackson's policy imposes a duty on Allstate to pay Nationstar "to the extent of [its] interest" (i.e., the mortgage) in Jackson's house, and it is undisputed that this duty was not relieved by the jury's determination that Jackson was responsible for the fire. We also note, however, that the policy requires Nationstar to establish its right to recovery by furnishing a proof of loss. The record indicates that, before Jackson filed suit, Allstate acknowledged its duty to pay her mortgage and, consistent with the terms of her policy, requested a proof of loss from Jackson's mortgage company. Prior to finally receiving a proof of loss from Nationstar in January 2014, nearly two years after the fire occurred, Allstate made at least ten additional attempts to obtain this information. In the proof of loss, Nationstar claimed its interest in Jackson's property was $203,164.41, and Allstate promptly issued a check to Nationstar in this amount. However, Nationstar has been unable to process this payment because Jackson has refused to consent to Nationstar's use of the funds to pay her mortgage. At the time this case was submitted, Allstate had not paid Jackson's mortgage.

With respect to Jackson's motion for an indicative ruling, she has presented no evidence or legal argument suggesting that her policy requires Allstate to pay Nationstar a sum greater than Nationstar claimed in its proof of loss. We thus hold the district court did not abuse its discretion in denying Jackson's motion for an indicative ruling regarding the amount Allstate owes Nationstar. Similarly, because Jackson alone is responsible for Nationstar's delay in processing Allstate's payment, we affirm the district court's denial of her motion to require Allstate to pay Nationstar.

We also reject Jackson's argument that she is entitled to a statutory penalty and attorney's fees with respect to the amount Allstate ultimately pays to Nationstar. Jackson's claim for a statutory penalty and attorney's fees arises from § 23-79-208(a)(1) of the Arkansas Code, which states:

> In all cases in which loss occurs and the [casualty insurance company] shall fail to pay the losses within the time specified in the policy after demand is made, the [company] shall be liable to pay the holder of the policy . . ., in addition to the amount of the loss, twelve percent (12%) damages upon the amount of the loss, together with all reasonable attorney's fees for the prosecution and collection of the loss.

Ark. Code Ann. § 23-79-208(a)(1). "This provision is penal in nature and is therefore strictly construed in favor of the party sought to be penalized. It should not be held to apply except in cases that come clearly within the statute." Primerica Life Ins. Co. v. Watson, 207 S.W.3d 443, 448 (Ark. 2004) (citations omitted). The purpose of this provision is to inhibit "the unwarranted delaying tactics of insurers." Id. In light of this purpose, the Arkansas Supreme Court has consistently declined to apply § 23-79-208(a)(1) in circumstances where the insurer's delay in payment was justified. Id. at 449-50; see Clark Center, Inc. v. Nat'l Life & Accident Ins. Co., 433 S.W.2d 151, 152-53 (Ark. 1968) (holding untimely payment was justified where insurer consistently acknowledged its duty to pay under policy and insured failed to "furnish proper and necessary information" despite insurer's good faith attempts to obtain it); see also Farm Bureau Mut. Ins. Co. of Ark. v. Shaw, 600 S.W.2d 432, 435 (Ark. Ct. App. 1980) (affirming trial court's award of statutory penalty and attorneys' fees to insured where insurer's payment to mortgagee was untimely and insurer provided "no justification for the delay"). Here, it is clear that Allstate's delay in paying Jackson's mortgage was initially caused by Nationstar's failure to "furnish proper and necessary information," and later by Jackson's refusal to consent to the payment. Clark Center, 433 S.W.2d at 152-53. In addition, Allstate made numerous good faith attempts to acquire the information it needed to pay Jackson's mortgage, and there is no evidence suggesting that Allstate engaged in any "unwarranted delaying tactics." Watson, 207 S.W.3d at 448. Accordingly, because Allstate's delay in paying Nationstar is justified, we find no error in the district court's denial of Jackson's motion for a statutory penalty and attorney's fees.

Finally we reject Jackson's remaining contentions as being without merit.

-19-

## III.    CONCLUSION

For the reasons stated above, we affirm the jury's verdict in favor of Allstate and the various rulings by the district court that Jackson appeals.

_____